**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Steven M. Brant, Employee, Claimant,

v.

Core Services, LLC and South Carolina Department of Transportation, Employer, Berkshire Hathaway Direct Insurance Company, Carrier, Markel Insurance Company and South Carolina State Accident Fund, Carriers, and South Carolina Workers' Compensation Uninsured Employers' Fund, Defendants,

of which Berkshire Hathaway Direct Insurance Company is the Appellant,

and

South Carolina Department of Transportation, South Carolina State Accident Fund, and South Carolina Workers' Compensation Uninsured Employers' Fund are the Respondents.

Appellate Case No. 2022-000154

———————

Appeal From The Workers' Compensation Commission

———————

Unpublished Opinion No. 2025-UP-264
Submitted April 1, 2025 – Filed July 30, 2025

———————

**AFFIRMED**

George D. Gallagher, of Speed, Seta, Martin, Trivett & Stubley, LLC, of Columbia, for Appellant.

Margaret Mary Urbanic and Matthew Joseph Story, both of Clawson & Staubes, LLC, of Charleston; and Lisa C. Glover, of Columbia, all for Respondent South Carolina Uninsured Employers' Fund.

Timothy Blair Killen, of Holder, Padgett, Littlejohn & Prickett, LLC, of Mount Pleasant, for Respondents South Carolina Department of Transportation and South Carolina State Accident Fund.

**PER CURIAM:**  In this workers' compensation matter, Berkshire Hathaway Direct Insurance Company (biBERK) appeals an order from the Appellate Panel of the Workers' Compensation Commission (the Commission) finding biBERK failed to effectively cancel the workers' compensation insurance policy it issued to Core Services, LLC (Core) and imposing liability upon biBERK for Steven M. Brant's (Claimant) compensable injuries.  We affirm.

"The South Carolina Administrative Procedures Act governs judicial review of decisions by the Workers' Compensation Commission." *Clemmons v. Lowe's Home Ctrs., Inc.-Harbison*, 420 S.C. 282, 287, 803 S.E.2d 268, 270 (2017); *see* S.C. Code Ann. § 1-23-380 (Supp. 2024).  "An appellate court's review is limited to the determination of whether the Commission's decision is supported by substantial evidence or is controlled by an error of law." *Clemmons*, 420 S.C. at 287, 803 S.E.2d at 270.

**STANDING**

biBERK argues the Commission erred in allowing the South Carolina State Accident Fund (SAF) and the South Carolina Workers' Compensation Uninsured Employers' Fund (UEF) to contest biBERK's cancellation of Core's insurance policy because they lacked standing.  biBERK asserts SAF and UEF were not parties to the insurance contract and, therefore, have no power to enforce it.  We disagree.

"A party has standing if the party has a personal stake in the subject matter of a lawsuit and is a 'real party in interest.'" *Ex parte Gov't Emp.'s Ins. Co.*, 373 S.C. 132, 138, 644 S.E.2d 699, 702 (2007) (quoting *Bailey v. Bailey*, 312 S.C. 454, 458, 441 S.E.2d 325, 327 (1994)). "A real party in interest . . . is one who has a real, actual, material or substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action." *Id.* (alteration in original) (quoting *Bailey*, 312 S.C. at 458, 441 S.E.2d at 327).

Here, SAF and UEF are named defendants in Claimant's action. Although they were not parties to the underlying insurance contract, they undeniably have a real, material interest in the outcome of Claimant's workers' compensation action. In his Form 50, Claimant sought determinations as to both the compensability of his injuries and the identity of the responsible financial party. Thus, the Commission's holding could have directly impacted either defendant.

As the carrier for Claimant's statutory employer, the South Carolina Department of Transportation (SCDOT), SAF's interest in the outcome of Claimant's action is not peripheral to the subject matter of the court. *Cf. id.* at 138–39, 644 S.E.2d at 702–03 (holding an insurance carrier's interest in a family court matter did not warrant intervention because its interest was "merely 'peripheral and not the real interest at stake'" (quoting *Bailey*, 312 S.C. at 454, 441 S.E.2d at 325)). The same can be said for UEF had the Commission determined Core's coverage had lapsed at the time of Claimant's injuries. Thus, we hold the Commission properly allowed SAF and UEF to challenge the validity of biBERK's cancellation of Core's policy.

**CANCELLATION OF THE POLICY**

Alternatively, biBERK contends that if SAF and UEF had standing, then the Commission erred in finding biBERK's cancellation of Core's policy invalid.

As a preliminary matter, biBERK contends Core stipulated that it did not have coverage at the time of Claimant's injuries. biBERK points to a compliance agreement Core entered into with the Commission in August 2019. In *Bowman v. State Roofing Co.*, our supreme court held that a similar capitulation agreement did not prevent the employer from challenging the validity of the carrier's cancellation of the workers' compensation insurance policy. 365 S.C. 112, 116–17, 616 S.E.2d 699, 701–02 (2005). Rather, the agreement served as an admission by the employer that it could not demonstrate compliance with workers' compensation insurance requirements after the Commission received notice that the employers'

coverage had been cancelled. *Id.* at 116, 616 S.E.2d at 701. While the employer agreed to pay a fine for non-compliance, the agreement did not contemplate the validity of the cancellation, and the employer insisted it remained covered. *Id.* Further, the agreement itself stated the employer did not "make any admissions or waive any claims or causes of action" against any third party or insurance company. *Id.* at 802, 616 S.E.2d at 701. We find the "compliance agreement" Core signed for the Commission serves a similar purpose. Like the agreement in *Bowman*, Core's compliance agreement also contained a clause stating it did not waive any claims it may have against an insurance company. Thus, we agree with the Commission that Core did not concede any claims it had against biBERK.

biBERK also asserts the Commission erred in applying South Carolina law when considering the validity of the policy cancellation.[1] We disagree. Section 38-61-10 of the South Carolina Code (2015) provides, "[A]ll contracts of insurance the applications for which are taken within the State are considered to have been made within the State and are subject to the laws of this State." "[U]nder this statute it is immaterial where the contract was entered into. Further there is no requirement that the policyholders or insurers be citizens of South Carolina." *Sangamo Weston, Inc. v. Nat'l Sur. Corp.*, 307 S.C. 143, 149, 414 S.E.2d 127, 130 (1992). "South Carolina has a substantial interest in who bears the ultimate liability for operations conducted in this state which result in injury to South Carolina property and citizens." *Id.* at 149, 414 S.E.2d at 131. Thus, although neither Core nor biBERK are located in South Carolina, the application of South Carolina law is, nevertheless, proper because "both parties availed themselves of the law of South Carolina when they respectively provided or received insurance on interests located in this state." *Id.*

On April 2, 2019, biBERK sent a Notice Of Cancellation (NOC) for Core's policy to Core and NCCI, alleging Core made a material misrepresentation in its application for workers' compensation insurance. The NOC advised that the policy would be canceled effective April 21.

Subsection 38-75-730(e) of the South Carolina Code (Supp. 2024) governs whether biBERK validly cancelled Core's policy prior to Claimant's date of injury. It states, "Cancellation of a workers' compensation insurance policy under this section is *not effective* unless *written notice of cancellation is delivered or mailed* to the South Carolina Workers' Compensation Commission, *and to the insured*, not

---

[1] biBERK concedes that the Commission has jurisdiction over the matter as South Carolina is a 3c endorsed state on the insurance policy.

less than the time frame required for notice to the insured under this section." *Id.* (emphases added). Thus, the plain language of the statute requires that biBERK provide at least thirty days written notice of cancellation to Core. *See* S.C. Code Ann. § 38-75-730(c) (Supp. 2024) (providing that a workers' compensation insurance policy that has been in effect for less than 120 days and that is not a renewal of a prior existing policy can be "canceled for any reason by furnishing *to the insured at least thirty days' written notice of cancellation*" (emphasis added)). Additionally, these statutory provisions must be read in conjunction with the policy and any applicable regulations. *See Crews v. W.R. Crews, Inc.*, 390 S.C. 15, 26, 699 S.E.2d 189, 195 (Ct. App. 2010) (noting that section 38-75-730(c) must be read in conjunction with any applicable regulations concerning when and how an insurance carrier may cancel a policy). South Carolina Regulation 67-405(C) addresses a carrier's NOC to the Commission: it requires notice to the Commission's authorized agent. *See* S.C. Code Ann. Regs. 67-405(C) (2012) (providing that if "the insurer cancels the policy, the employer's insurer shall immediately notify the Commission's authorized agent that it no longer insures the employer. . . . [a] worker's compensation insurance carrier shall file a notice of termination [that will] not be effective until thirty days after receipt by the Commission's authorized agent"). The cancellation provisions within the policy require biBERK to provide at least ten days written notice to the employer "at [the] mailing address shown in Item 1 of the Information Page." The cancellation provisions further state, "Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law." Therefore, reading the policy language and the applicable statutes and regulations together, biBERK was required to provide at least thirty days written notice to Core and the Commission's authorized agent, the National Council on Compensation Insurance (NCCI), to cancel the policy. Further, for the cancelation to be valid, the policy required the notice to be mailed or delivered to the insured's address specified in Item 1 of the policy information page.

Based on the foregoing, the cancellation could not have been effective until May 2. Claimant's injuries occurred on May 6. Under Item 1 of the policy information page, Core listed its address as 828 East High Street, PMB 272, Lexington, Kentucky 40502. This address was listed on the NOC itself; however, the proof of mailing for the NOC failed to include the PMB—listing only 828 East High Street as the address in Lexington. According to NCCI records, it received biBERK's NOC for Core on April 2, but nothing in the record indicates if or when Core received the NOC. All of biBERK's documents marked for internal use include the full address. In a deposition submitted to the Commission, Margaret Yoh, an underwriting specialist for biBERK, admitted the proof of mailing omitted the

personal mailbox number for Core's address and that their records contained no proof that Core received the NOC. Core has neither appeared nor taken a position in this action.

In its order, the Commission stated:

> In this case, biBERK's proof of mailing does not show the entire, complete, or proper address as set forth in the policy. We do not find this deficiency to be a mere "scrivener's error" or "inconsequential," as stated in biBERK's legal memorandum. The legistature specifically allows Carriers to prove cancellation by and through a proof of mailing: a proof of mailing showing the cancellation was sent somewhere other than required by law is most certainly not "inconsequential."

The Commission, therefore, found biBERK's cancellation of Core's policy invalid for failing to fully comply with South Carolina law and the terms of the policy.

Based on the foregoing, we hold there is evidence in the record to support the Commission's finding that biBERK failed to effectively provide notice to Core of its policy cancellation. *See Barton v. Higgs*, 381 S.C. 367, 369–70, 674 S.E.2d 145, 146 (2009) ("When reviewing an appeal from the workers' compensation commission, the appellate court *may not weigh* the evidence or substitute its judgment for that of the full commission as to the weight of evidence on questions of fact." (emphasis added)).

**CONCLUSION**

Accordingly, the Commission's order is

**AFFIRMED.**[2]

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.